J-A22037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDELMIRO MORALES | : | |
| | : | |
| Appellant | : | No. 1672 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 29, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008987-2022

BEFORE: LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED DECEMBER 18, 2025**

Edelmiro Morales appeals from the May 29, 2024 aggregate judgment of sentence of 4 to 10 years' imprisonment, followed by 1 year probation, imposed after he was found guilty in a bench trial of persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[1] After careful review, we affirm the judgment of sentence.

The relevant facts of this case, as gleaned from the certified record, are as follows: On August 25, 2022, at approximately 2:30pm in the afternoon,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

Jasmin Gomez[2] got in the passenger seat of a silver Honda Accord that Appellant, her then-boyfriend, was driving. Gomez testified that she was aware that Appellant carried a gun. Appellant and Gomez drove to the corner of B and Clearfield Streets in Philadelphia, stopped the car, and got out. While crossing the intersection, a man approached them and opened fire from the other side of the street, approximately 35 to 40 feet away. Gomez testified that within "five seconds," Appellant immediately retrieved a firearm from driver's side of the vehicle and returned fire. The shooter struck Appellant in the back of his shoulder and then fled, and Appellant was subsequently transported to the hospital by police. *See* notes of testimony, 11/14/23 at 13-18, 22-24.

Appellant was ultimately charged with persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia in connection with this incident. Appellant waived his right to a jury and proceeded to a bench trial before the Honorable Donna M. Woelpper on November 14, 2023. The trial court summarized the additional testimony and evidence presented at Appellant's bench trial as follows:

> The Commonwealth next presented the testimony of Philadelphia Police Officer Donald Vandurmay. Officer Vandurmay testified that on August 25, 2022 at 2:30 p.m., he responded to a call for a shooting at B and Clearfield Streets. When he arrived, he encountered

---

[2] Gomez indicated at trial that she was reluctant to testify and was only doing so because the Commonwealth had subpoenaed her. Notes of testimony, 11/14/23 at 11-12.

[Appellant] who had been shot. Two other police officers quickly arrived in a patrol car and transported [Appellant] to the hospital. Officer Vandurmay then held the scene, where multiple fired cartridge casings ("FCCs") were recovered.

Philadelphia Police Detective Timothy Gibson next took the witness stand for the Commonwealth. Detective Gibson testified that he and his partner, Detective McGuire, were assigned to investigate the August 25, 2022 shooting incident at B and Clearfield Streets. On the same date, they photographed and processed the scene, where a total of seven pieces of ballistics were recovered: five 40-caliber FCC's, one nine-millimeter FCC, and one projectile. Detective Gibson further noted that the nine-millimeter casing and projectile were recovered from the north side of Clearfield Street, whereas the five 40-caliber FCCs were recovered from the south side of the street. He and his partner photographed the ballistic items prior to securing them via property receipt and submitting them to the Firearms Identification Unit. Additionally, Detective Gibson drew a sketch of the scene depicting the relative locations of the ballistic evidence recovered from opposite sides of the street.

Additionally, the Commonwealth introduced video surveillance from adjacent Real-time Crime cameras, which captured some of the events at issue. In pertinent part, the video surveillance depicted: (a) [Appellant] and Ms. Gomez running from the intersection of B and Clearfield Streets; (b) [Appellant] handing a firearm to Ms. Gomez, who walks away with it; and (c) [Appellant] continuously clutching the back of his left shoulder.

The Commonwealth also introduced a 911 call from a neighbor who described some of the shooting events as they were unfolding. Specifically, the caller reported: (a) people currently shooting at each other at B and Clearfield Streets; (b) a male getting shot; and (c) shooting emanating from a grey Honda Accord with a black bumper and being occupied by two Hispanic males and one Hispanic female.

- 3 -

Trial court opinion, 9/4/24 at 3-4 (citations, internal quotation marks, and some parentheticals omitted).

Additionally, stipulations were introduced at trial that Appellant did not have a license to carry a firearm and that he had a prior disqualifying conviction to possess a firearm. **See** notes of testimony, 11/14/23 at 64-65. Following a one-day bench-trial, the trial court found Appellant guilty of the aforementioned offenses and sentenced him to an aggregate term of 4 to 10 years' imprisonment, followed by 1 year probation, on May 29, 2024. This timely appeal followed on June 11, 2024.[3]

Appellant raises the following issue for our review:

> Whether the prosecution presented insufficient evidence to prove beyond a reasonable doubt that [Appellant] actually or constructively possessed a firearm at any moment in which he was not justified to act in self-defense[?]

Appellant's brief at 3.

Our standard of review in evaluating a challenge to the sufficiency of the evidence is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-

---

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

To establish a *prima facie* case of persons not to possess firearms, the Commonwealth must present evidence that a defendant possessed a firearm and that he had previously been convicted of one of the enumerated offenses which made him ineligible to possess that firearm. 18 Pa.C.S.A. § 6105(a)(1). To establish a *prima facie* case of firearms not to be carried without a license, the Commonwealth must present evidence "that the defendant intentionally, knowingly, or recklessly carried a firearm in a vehicle or concealed on or about his person outside his home or place of business without a valid and lawfully issued license." *Id.* § 6106(a)(1). Lastly, in order to convict a defendant for carrying firearms on public streets in Philadelphia, the Commonwealth must prove that he was carrying a firearm on the public streets of Philadelphia and that he was neither licensed to do so nor exempt from the licensing requirement. *Id.* § 6108. Thus, each of the aforementioned charges requires possession as an element of the offense.

Here, the crux of Appellant's claim is that the Commonwealth failed to prove that he "actually or constructively possessed" the firearm in question because he was legally justified to possess and use it in self-defense. Appellant's brief at 12. We disagree.

This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Rojas-Rolon***, 256 A.3d 432, 437 (Pa.Super. 2021) (citation omitted), ***appeal denied***, 285 A.3d 879 (Pa. 2022). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa.Super. 2013), ***appeal denied***, 78 A.3d 1090 (Pa. 2013).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control.

***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa.Super. 2018) (citations and internal quotation marks omitted), ***appeal denied***, 202 A.3d 4 (Pa. 2019). As with any other element of a crime, the Commonwealth may sustain its burden of proving constructive possession by means of wholly circumstantial evidence. ***Id.***; ***see also Hopkins***, 67 A.3d at 820.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was ample evidence to establish that Appellant constructively possessed the firearm that he retrieved from the driver's side of the vehicle he was driving and subsequently used after an assailant opened fire on him. The record establishes that on the afternoon of August 25, 2022, Appellant drove himself and his then-girlfriend of two years,

Gomez, in a distinct silver Honda Accord to the intersection of B and Clearfield Streets in Philadelphia. Notes of testimony, 11/14/23 at 13-14. Gomez testified that after exiting the vehicle, an unknown male approached and began to shoot at them as they crossed the intersection, at which point Appellant immediately "went to the vehicle and grabbed his weapon and started shooting back." *Id.* at 14-15, 24. Gomez opined that it took Appellant "not even five seconds" to retrieve the firearm from the driver's side of the vehicle and return fire. *Id.* at 24. Gomez further testified that she was aware that Appellant carried a firearm, and it is undisputed that he was not only unlicensed but statutorily prohibited from doing so. *Id.* at 16, 64-65.

Appellant's intimation that he cannot be found to be in constructive possession of the firearm in question because it could have belonged to the registered owner of the vehicle, his brother-in-law, is equally without merit. *See* Appellant's brief at 16-17. Our Supreme Court has recognized that two persons may constructively possess an item at the same time. *See Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) ("constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access." (citation and internal quotation marks omitted)). The record clearly establishes that Appellant had "the power to control the [firearm] and the intent to exercise that control." *Parrish*, 191 A.3d at 36.

Moreover, as recognized by the trial court, the timing and manner of Appellant's swift retrieval of the firearm in question, as well as its location on the driver's side of the vehicle he was observed operating moments before, belies any notion that Appellant merely happened upon a firearm to use in self-defense. *See* trial court opinion, 9/4/24 at 11, n.8.

Based on the foregoing, we discern no error on the part of the trial court in concluding that the Commonwealth presented sufficient evidence to sustain Appellant's convictions for persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2025